IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Brenda Butler, ) | |
| ) | Civil Action No. 6:12-cv-03608-JDA |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER ON DEFENDANT'S MOTION** |
| ) | **FOR SUMMARY JUDGMENT** |
| Drive Automotive Industries of America, ) | |
| Inc. d/b/a Magna Drive Automotive,[1] ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on Defendant Drive Automotive's ("Drive" or "Defendant") motion for summary judgment. [Doc. 61.] Plaintiff Brenda Butler ("Plaintiff") brings this case pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(A) and Local Civil Rule 73.02(B)(1), D.S.C., the parties' consent to jurisdiction by a magistrate judge and the Honorable G. Ross Anderson's February 6, 2013, Order of Reference [Docs. 26, 30], this case is before the undersigned for full disposition.

Plaintiff filed this action in state court on November 16, 2012, which Drive and Resource removed to this Court on December 21, 2012. [Docs. 1, 1-1.] Plaintiff filed an Amended Complaint on January 1, 2013, generally alleging sex discrimination, harassment, retaliation, and hostile work environment claims. [Doc. 12.] On November 20, 2013, Defendant filed a motion for summary judgment. [Doc. 61.] Plaintiff filed a response in opposition on December 5, 2013 [Doc. 67], and Defendant filed a reply on

---

[1] Defendants EmployBridge of Dallas Inc. And Staffing Solutions Southeast Inc. (collectively doing business as ResourceMFG ("Resource")) were dismissed with prejudice on November 20, 2013. [Doc. 62.]

December 16, 2013 [Doc. 69]. Accordingly, the motion for summary judgment is ripe for review.

## BACKGROUND

Plaintiff worked for Resource, a temporary staffing agency. [Doc. 61-2 at 17, 25.] After being hired by Resource, Resource assigned Plaintiff to work at Drive, which produces doors, fenders and body parts for BMW, Mercedes, Chrysler, Ford and GM. [Doc. 61-3 at 3.] Plaintiff was never hired to work directly for Drive. [Doc. 61-2 at 17.] While working at Drive, Plaintiff claims that she was sexually harassed by John Green, a Drive employee who was the team leader in Plaintiff's assigned department. [Docs. 12, 61-2 at 39–43.] Plaintiff alleges she was terminated because of her repeated complaints about Green's behavior. [*Id*.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Title VII makes it unlawful for "an employer . . . to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A threshold question for a court considering whether a plaintiff has asserted a cognizable Title VII claim is whether the defendant is an "employer" under the statute. Drive argues that it was not Plaintiff's employer, in either a single or joint status, but that Plaintiff was solely employed by Resource. After review of the record, the Court agrees.

Whether a entity constitutes an employer for purposes of Title VII is a question of law for the Court. *Cilecek v. Inova Health Sys. Svs.*, 115 F.3d 256, 261 (4th Cir. 1997). In making such a determination, courts in the Fourth Circuit are to apply the general common law of agency. *Id.* at 260. The *Cilecek* Court went on to articulate factors that should be considered in the analysis:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired

4

party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.[2]

*Id.* No one factor is determinative, and the extent to which each factor applies varies depending on the circumstances of the case. *See id.*; *see also Murry v. Jacobs Tech., Inc.*, 2012 U.S. Dist. LEXIS 48169 (M.D.N.C. Apr. 5, 2012). "Merely because employee and independent contractor status is each supported by certain factors does not bar entry of summary judgment. Whether a person is an employee depends on the common law of agency definition of employee." *Farlow v. Wachovia Bank of N.C., N.A.*, 259 F.3d 309, 314 (4 th Cir. 2001). "At root, the distinction at common law between an employee and an independent contractor rests on the degree of control exercised by the hiring party." *Cilecek*, 115 F.3d at 260.

In addition, courts have combined separate business entities to treat them as a single employer in order to meet the "15 or more employees" requirement of Title VII and for purposes of liability. *See EEOC v. Alford*, 142 F.R.D. 283, 286 (E.D. Va. 1992). Courts have also held two employers as joint employers and thus jointly liable for a Title VII claim depending on whether each employer "exercises substantial control over significant aspects of the compensation, terms, conditions or privileges of a plaintiff's employment." *Williams v. Grimes Aerospace Co.*, 988 F.Supp. 925, 934 (D.S.C. 1997)(quoting *Magnuson v. Peak Tech. Servs., Inc.*, 808 F.Supp. 500, 507 (E.D. Va. 1992)). Therefore, the Court

---

[2] In *Cilecek*, the Court considered whether a doctor was an independent contractor or an employee of a hospital. The Fourth Circuit made clear in *EEOC v. MCI Telecommc'n, Inc.* that the relative weighting of factors may be different depending on the industry at issue. 187 F.3d 629, at *5 (4th Cir. 1999).

proceeds to determine which entity, or whether both Resource and Drive, exercised significant control over the Plaintiff.

As Plaintiff explained in her deposition, "I never worked directly for Drive but I worked for Resource through Resource." [*Id.*] Plaintiff later noted that she thought she worked for both Drive and Resource because Ryan Roberson ("Roberson"), her onsite supervisor from Resource, said that "when we go out on the job, that Resource and the company you work for, we are representing both." [*Id*. at 25.]

Resource placed Resource supervisors at Drive to directly oversee the Resource employees. [*Id*. at 26.] Plaintiff acknowledged that she was to go to one of the Resource supervisors for any issues she had during her assignment at Drive. [*Id*. at 27.] Plaintiff admits that she did not sign any documents with Drive. [*Id*.] Resource provided its own training and safety demonstrations for its employees, including orientation on safety, attendance, hazards and how to perform on the job. [*Id*. at 27–8.] Resource paid Plaintiff. [*Id*. at 32.] Plaintiff testified that she knew she should report to Roberson, a Resource supervisor, about the alleged harassment and she did so.[3] [*Id*. at 30, 47.] Roberson also set Plaintiff's shifts and communicated her schedule to her. [*Id*. at 31.] Roberson and two other Resource supervisors, Roxanne and Devi, gave Plaintiff her assignments at Drive. [*Id*. at 33.] While the Drive employees told Plaintiff "if [she] was supposed to run a certain machine," Plaintiff did not receive any other instructions from Drive supervisors or employees. [*Id*. at 33.] If there was a problem with Plaintiff's attendance or performance,

---

[3] Plaintiff also reported the harassment to Lisa Thomas and Roxanne, another Resource supervisor. [Docs. 61-4 at 17, Doc. 61-2 at 47.]

such critique came from Resource, not Drive. [*Id*. at 34.] Plaintiff was terminated by Resource. [*Id*. at 36.]

Lisa Thomas ("Thomas"), a Drive supervisor, testified that if she needed associates to work in her area, she would contact Resource and make the request. [Doc. 61-3 at 4.] If she had a disciplinary issue with a Resource employee, she notified the Resource on-site supervisor and the Resource supervisor handled the discipline. [*Id*.] Drive could not fire Plaintiff, so when Thomas became unhappy with Plaintiff's performance, she contacted Resource and asked Resource to move or replace Plaintiff. [*Id*. at 6.] Thomas requested a replacement for Plaintiff in November, but Resource asked Thomas to be patient and wait for a replacement until after the holidays, when more Resource associates were available. [*Id*. at 7.]

Roberson testified that he directly supervised Plaintiff and was responsible for disciplining her. [Doc. 61-4 at 7.] He averred further that Resource developed its own safety program for Resource employees at Drive, that Resource had its own manual for Resource employees at Drive [*id*. at 8–9], and that Resource maintained the employee file on Plaintiff [*id*. at 12]. Resource employees were to follow Resource's rules and policies. [*Id*.] Roberson testified that Drive gave the Resource employees specific work instructions (after Resource supervisors assigned the employees their respective areas), that Drive owned most of the tools and equipment that employees used and that Drive owned and operated the plant at issue. [*Id*. at 14.] Roberson stated that when Plaintiff made her harassment allegations, Drive came to him and he informed Drive that he would speak with Plaintiff. [*Id.* at 17.] Drive did not handle employee issues for Resource employees. [*Id*. at

7

21–2.] Resource maintained its own office space at Drive's plant; had its own human resources function at the plant, its own safety regulations and policies, including attendance, time clock, parking, and badging in; and conducted training for the Resource employees at Drive. [*Id*. at 29–30.] Resource employees also wore the Resource uniform rather than the Drive uniform. [*Id*.] Resource supervisors made the decisions about where to assign Resource employees and Direct employees could not terminate or otherwise replace Resource employees. [*Id*. at 32.]

Debra Sovine ("Sovine"), HR manager at Drive, testified that Plaintiff was not an employee of Drive and Drive's policies did not apply to Plaintiff. [Doc. 61-6 at 7.] Moreover, Resource was responsible for investigating Plaintiff's sexual harassment claims because Plaintiff was a Resource employee. [*Id*. at 14.] Sovine also stated that she was not responsible for Plaintiff's attendance or discipline. [*Id.* at 16.]

After assessing the record in this case, the Court finds that Drive is not Plaintiff's employer for purposes of Title VII. The testimony demonstrates that Plaintiff, Resource and Drive all understood that Plaintiff was an employee of Resource and not of Drive. Though Plaintiff claims that she thought she was an employee of both, her testimony reveals that she was told she represented both, but understood that her paycheck and instructions came from Resource. She acknowledged that she never signed any agreements with Drive and that she was to report directly to her on-site Resource supervisor. Resource maintained its own space at Drive, and Resource employees had their own parking, uniforms and policies for attendance and signing in. Resource conducted its own training, pursuant to Resource's own policies. Resource was responsible for investigating Plaintiff's sexual harassment claim. Resource paid Plaintiff.

Resource set Plaintiff's schedule and assigned her to her particular work area. Resource terminated Plaintiff; Drive could not do so.

Plaintiff argues that Plaintiff worked at the Drive facility, making Drive products with Drive machinery. While true, as noted, Resource maintained its own space and personnel at Drive's facility. Moreover, the Fourth Circuit has recognized that certain factors may weigh against each other in conducting this analysis, but the Court is to make the determination based on the common law of agency and control. *See Farlow*, 259 F.3d at 314. While Resource's policies may have mirrored Drive's in certain respects, Plaintiff was governed by Resource's policies and not Drive's.[4] Plaintiff also asserts that Drive was the entity truly making the hiring and firing decisions, because Charles Sanders, the Resource Branch Manager in Greenville, testified that he did not know of an instance where Drive requested that a Resource employee be replaced and it was not done. [Doc. 61-9 at 7.] However, Sanders stated further that it was possible that upon further investigation with the Drive supervisor, a Resource employee may not be terminated. [*Id*.] Importantly, the Parties do not dispute that Drive could not simply terminate Plaintiff; Drive did not possess the authority to do so. Finally, while Plaintiff attempts to use Roberson's testimony to argue that Drive set her schedule and her work, when read in context, Roberson states that he assigned Plaintiff her shifts, her area of responsibility and handled Plaintiff's discipline. Drive was simply responsible for instructing Plaintiff on which machine to use, which Plaintiff's testimony also bears out.

---

[4] In an attempt to contradict this finding, Plaintiff points to Thomas' deposition, in which Thomas states that Plaintiff was governed by Drive's attendance policy. However, all other testimony supports the finding that Plaintiff was governed by Resource's policies. Additionally, Thomas states that she believes Resource also had an attendance policy governing Plaintiff, which was "stricter" than Drive's policy. [Doc. 67-4 at 17.]

In light of these facts, when assessing the control over Plaintiff, the Court determines that Resource had control over Plaintiff's schedule, hours, work and discipline. Resource also paid Plaintiff and governed her actions with their policies. Resource maintained on-site personnel to deal with their employees. Therefore, the Court finds that Resource was Plaintiff's sole employer for purposes of Title VII. *See Johnson v. Hubner Mfg. Co.*, Civil Action No. 03-3743, Dkt. No. 56 (D.S.C. Jan. 5, 2005) (holding that an employee of a temporary staffing agency was not an employee of the manufacturing plant where she was assigned because details of her assignment were handled through the staffing agency, her benefits were paid through the agency, the plant did not discipline her and could not terminate her). Wherefore, based upon the foregoing, Defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 10, 2014
Greenville, South Carolina